UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                      :

LYNDA T. STEWART,                    :

                    Plaintiff,      :

                                    :   __-CV-_____

         - against -         :

                                    :   **COMPLAINT**

FASHION INSTITUTE OF TECHNOLOGY,  :

                                    :   **JURY TRIAL DEMANDED**

                    Defendant.  :

                                    :

---------------------------------------------------------------- x

       Plaintiff Lynda T. Stewart ("Stewart"), by and through her attorneys, Cerasia & Del Rey-Cone LLP, for her Complaint against defendant Fashion Institute of Technology ("FIT" or "Defendant") alleges as follows:

## NATURE OF ACTION

       1.      Stewart brings this lawsuit against FIT seeking money damages, as well as declaratory, injunctive and equitable relief, to redress FIT's unlawful discrimination and retaliation against Stewart in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101, *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

       2.      This Court has subject matter jurisdiction over Stewart's claims pursuant to 28 U.S.C. §§ 1331 and 1343, because her Title VII and Section 1981 claims arise under the laws of

the United States. This Court has supplemental jurisdiction over Stewart's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PROCEDURES

4. Stewart filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2018.

5. On or about October 1, 2018, Stewart received a Notice of Right to Sue from the EEOC. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A.

6. Following the commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the NYCHRL.

7. Any and all other prerequisites to the filing of this lawsuit have been met.

## PARTIES

8. Stewart, a former Adjunct Instructor at FIT, currently resides in New York, New York. At all relevant times herein, Stewart has met the definition of "employee" under all applicable statutes.

9. Stewart is an African-American female. Stewart is also a disabled individual.

10. FIT is part of the State University of New York and is a public institution. FIT's principal place of business is located in New York, New York. At all relevant times herein, FIT met the definition of "employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

11.     In or around August 2000, Stewart began her employment with FIT as an Adjunct Instructor in the Fashion Merchandising and Management Department. In or around 2015, the department changed its name to the Fashion Business Management Department ("FBM").

12.     Stewart was recruited, by now retired FIT Professor LaDonna Garrett ("Garrett") (African-American female). Garrett told Stewart that she was recruiting Stewart as part of an effort to increase the number of African Americans (and, more specifically, African American women) to be represented in the FIT faculty.

13.     From Fall 2000 through Fall 2016, Stewart received consistent Faculty Observation ratings of "Very Good to Excellent."

14.     Stewart's career demonstrated excellence through her Faculty Observations and Student Evaluations which resulted in Commendation letters from various Deans including, most recently, two (2) Commendations from Steven Frumkin ("Frumkin") (white male), Dean of the Jay and Patty Baker School of Business and Technology.

15.     Throughout her employment, Stewart was consistently concerned about the discriminatory atmosphere surrounding African-American faculty.

16.     During all relevant times, it was widely understood by the African-American faculty that the systematic, discriminatory practices of the FIT administration would make achieving a full-time tenured Professor position extremely difficult, if not impossible. For example, upon information and belief, as of the end of 2018, there is only one full-time African-American professor and faculty member within the entire FIT, and less than 1% of the African-American female faculty are full-time professors. In addition, Gary Lampley ("Lampley") (African-American male) shared with Stewart that he personally had a very difficult time being

taken seriously with regards to his own promotion. Lampley complained to FIT that the school's failure to promote him was related to race discrimination.

17. Based upon information and belief, after Lampley's discrimination complaint, Dr. Joyce F. Brown ("Brown") (African-American female), President, FIT, saved Lampley's position and he ultimately received tenure.

18. Another example of the FIT's discriminatory behavior involved Gloria Hartley (African-American female) ("Hartley") who taught at FIT for over twenty (20) years and, like Lampley, was never afforded the opportunity to move beyond the position of Assistant Professor.

19. In or around the Fall 2016 semester, Stewart was asked to teach two (2) sections of Intro to the Fashion Business (FM 114) which she had also taught during the Fall 2015 semester.

20. Since the textbook that had been used for FM114 was somewhat outdated, Stewart spoke to both Course Coordinators regarding using a different textbook which had been used by several members of the faculty in the FBM department. The Course Coordinators confirmed that Stewart could select a new textbook.

21. Stewart's Faculty Observation for FM 114 was "Very Good" for both the Fall 2015 and Fall 2016 semesters.

22. Stewart's combined student evaluation scores for FM 114 went down slightly between the Fall 2015 and the Fall 2016 because students expressed that they found the new, approved textbook choice too challenging.

23. Each semester, a committee consisting of tenured FIT faculty meets to discuss whether to reappoint non-tenured professors. In those meetings, each non-tenured professor's

Faculty Observations and Student Evaluations are presented to the committee by the assigned Professor's faculty observer. Following the presentation, the committee embarks on a secret vote wherein each member votes on whether that non-tenured professor should be reappointed.

24.    In or around March 2017, Stewart's reappointment was presented to the committee and, for the first time since 2000, the committee voted against reappointing her.

25.    As a result, on March 24, 2017, Robin Sackin ("Sackin") (white female), Chair, FBM, requested that Stewart meet with her at 4 pm, despite the fact that Stewart was scheduled to teach her class at 6:30 pm that day.  During that meeting, Sackin informed Stewart that she would not be reappointed for the Fall 2017 semester.

26.    Sackin also stated that Stewart could "never again teach at FIT" and that there was nothing she could do to change the non-reappointment decision.  Sackin presented Stewart with a document that she pressured Stewart to sign, and she described to Stewart that the document was merely an acknowledgement of having been "presented" with a non-reappointment document.

27.    Stewart was in shock and completely uncomfortable signing the document under those circumstances, but finally acquiesced, simply as an acknowledgment that she had received it.  Stewart went on to teach her 6:30 pm class ridden with anxiety and deep distress.

28.    Stewart spoke with Esther Olivares ("Olivares") (white female) in Faculty Services about the committee's decision.  Olivares listened to Stewart's recounting of the meeting with Sackin and indicated that she would get back to Stewart regarding this matter. Olivares then reviewed Stewart's stellar history of student evaluations and commendations, and stated that she would look into the FBM committee's decision.

29.    Stewart drafted a rebuttal to the FBM committee's decision.  She sent this rebuttal to Frumkin, who had previously given her Dean's Commendations for the two prior semesters.

30.     Stewart also shared the rebuttal with Oliveras.  Based upon information and belief, the rebuttal was also shared with the Vice President of Academic Affairs, Giacomo Oliva (white male).

31.     Oliveras eventually shared with Stewart that Frumkin sent a letter, dated May 3, 2017, reversing his decision to endorse the FBM committee's non-reappointment of Stewart for the Fall 2017 semester and that this letter had also been sent to Sackin.  Stewart did not receive a copy of this letter until on or about May 13, 2017.

32.     Despite Frumkin's letter, Sackin continued to state, directly to Stewart, that she was not reappointed and ignored Stewart's attempts to secure a teaching assignment for the Fall 2017 semester.  Stewart informed Olivares that during this period Sackin continued to insist that the denial of reappointment had not been reversed.

33.     On or about June 26, 2017, Stewart had hip surgery requiring that she use a walker for mobility.

34.     Despite Frumkin's reversal of the denial of reappointment, Stewart had to actively and repeatedly pursue Sackin to attain class options available for teaching in the Fall 2017 semester.  Finally, in or round late July 2017, Sackin informed Stewart that she actually could teach FM 361 – a three-hour class for upper division students.

35.     FM 361 is a very comprehensive class and required more than three weeks of preparation.  Given the short lead time, Stewart diligently began to prepare for the course despite post-operative physical therapy and follow-up doctor appointments. Stewart also promptly and diligently reached out to the Course Coordinator, Janet Messinger, who informed Stewart that she was on vacation and could not possibly meet with her to discuss the course until the middle of August – two weeks before the beginning of class.

36. Stewart attended the Course Coordinator's meeting despite requiring a walker, given her very recent, June 26, 2017 hip surgery.

37. On or about September 1, 2017, Stewart began teaching FM 361.

38. On or about September 15, 2017, Stewart had emergency Spine-Thoracic surgery.

39. Both Sackin and Shelley Kohan ("Kohan") (white female), Assistant Professor, were aware of Stewart's second recent surgery. Nonetheless, Sackin and Kohan insisted that Stewart's Faculty Observation take place on September 29, 2017.

40. Neither Sackin nor Kohan made any mention of Stewart's surgery, nor did they inquire about her well-being or recovery.

41. Despite Stewart's two major surgeries, within a two and one half months of one another, no one at FIT informed Stewart that she was entitled to six (6) weeks of disability leave. Stewart took only two (2) weeks off, given that she feared that Sackin and the biased committee would use her absence from FIT as another excuse to strip her of her teaching position.

42. No one at FIT ever engaged in the interactive process to ascertain what reasonable accommodations would allow Stewart to teach without pain.

43. While using a walker and enduring severe back pain, Stewart managed to teach her class while Kohan observed. Fearful for her job, Stewart chose not to protest the obviously discriminatory and punitive timing of the review.

44. Kohan gave Stewart an unsatisfactory review for the September 29, 2017 class she observed. Kohan indicated that she did not like the subject matter of the class, nor Stewart's teaching technique.

45. Stewart informed Kohan that she was unwilling to sign the Faculty Observation.

46. Following Kohan's review, Stewart called Human Resources Generalist, Robert Brown ("Brown") (white male), to raise her concerns of discrimination and retaliation. Brown

then directed Stewart to FIT Affirmative Action Officer, Deliwe Kekane ("Kekane") (African-American female).

47.     On October 27, 2017, Stewart met with Kekane. During the meeting, Kekane admitted that she had not reviewed the documents Stewart had sent her days prior to their scheduled meeting.

48.     Kekane's assistant joined the meeting and took notes. During that meeting, Stewart clearly relayed to Kekane that she was a victim of racial discrimination.

49.     At the end of the meeting, Kekane told Stewart that her assistant would send a transcript of the meeting to Stewart for her review and that Stewart could then edit the notes to ensure that they were accurate for the investigation file.

50.     It took two weeks for Kekane to send Stewart the transcript of their meeting and she only did so because Stewart called to inquire as to the status. Stewart promptly reviewed and edited the notes and sent them back to Kekane for the investigation file.

51.     Approximately seven months passed, and Stewart still did not receive any information whatsoever from Kekane and/or the Affirmative Action Department regarding the status of her complaint, despite several inquiries from Stewart.

52.     Meanwhile, on December 4, 2017, Stewart emailed Sackin to inquire about the status of her classes for the Spring 2018 semester. Sackin responded that Stewart had not been re-appointed for the Spring 2018 semester. This was the first time Stewart had been informed in any way as to having not been re-appointed for the Spring 2018 semester.

53.     In light of this news, on or about December 5, 2017, Stewart met with, Stephan Kanlian ("Kanlian") (white male), Vice President of FIT's Adjunct Professors, and Ellen Goldstein ("Goldstein") (white female). Both Kanlian and Goldstein were officers within the Union of College Employees.

54.     During the December 5 meeting, Goldstein indicated that Sackin was in violation of Collective Bargaining guidelines, which state that Stewart should have been notified of her non-reappointment by December 1, 2017.  Goldstein then made a phone call and told Stewart that the non-appointment had once again been overturned and that Stewart was to meet with Sackin to select available classes to teach in Spring 2018.

55.     Stewart was assigned two sections of FM 268 – a Team Development Workshop – for Spring 2018.  Stewart has frequently taught this same class, received numerous "excellent" faculty observations ratings and has had approximately 20 years of team building and management experience, in several companies, in the corporate sector.

56.     Janet Zeevalk ("Zeevalk") (white female), professor and personal friend of Sackin's, was assigned to conduct Stewart's Faculty Observation at the beginning of the Spring 2018 semester

57.     On or about March 2, 2018, Stewart met with Zeevalk who ultimately provided Stewart with a Faculty Observation rating of "Good."  Stewart did not agree with numerous aspects of Zeevalk's "feedback" and informed Zeevalk that she would sign the review but intended to submit a rebuttal.

58.     In or around mid-March 2018, Stewart submitted the rebuttal to Sackin to be presented and read to the re-appointment committee.

59.     Shortly after Stewart submitted the rebuttal, she was again told that she was not reappointed for the upcoming Fall 2018 semester.

60.     Typically, a Faculty Observation rating of "Good" meets FIT guidelines for reappointment.  In addition, Stewart received a Student Evaluation of 5.91 out of a maximum 6.00, for teaching the Fall 2017 FM-361 class.

61.     Sackin informed Stewart that this was the third time that she had been denied reappointment and there was no way she would be reinstated. Based on this information, Stewart then reached out to Brown regarding Stewart's denied reappointment and her discrimination complaint to the Affirmative Action Department. Brown informed Stewart she "might possibly" meet with her after the conclusion of the Affirmative Action complaint. The meeting never took place.

62.     By the start of the Spring 2018 semester, Stewart had still not heard from Kekane regarding the investigation into her claim of discrimination. Finally, in or around April 2018 (six (6) months after their meeting), Stewart received confirmation from Kekane's assistant that they were finally investigating her complaint.

63.     On or about May 18, 2018 (more than half a year after Stewart met with her), Kekane informed Stewart that her allegations of discrimination had been unsubstantiated.

64.     Stewart has been deprived of the opportunity to teach for FIT since the Spring 2018 semester.

65.     During her employment, Stewart raised her concerns of race discrimination and lack diversity within the faculty of FIT, but FIT ignored her good-faith complaints and took no corrective action in response to those complaints.

66.     Stewart underwent major surgery on two separate occasions and FIT did nothing to accommodate her disability.

67.     Stewart is aware of other African-American employees who were not promoted because of FIT's discriminatory practices.

68.     The deplorable conduct against Stewart in the face of her complaints of discrimination was egregious and wholly ignored and condoned by FIT's administrators and demonstrated a willful and reckless disregard for Stewart's rights under the applicable laws and

caused her humiliation, embarrassment, physical and psychological pain and suffering, and extensive damage to her reputation.

69.     Stewart has also have suffered lost wages and benefits and will continue to do so into the future.

## FIRST CAUSE OF ACTION
### Race Discrimination and Harassment in Violation of Section 1981

70.     Stewart incorporates herein by reference paragraphs 1 through 69 above, as if set forth herein in their entirety.

71.     FIT discriminated against Stewart on the basis of her race in violation of Section 1981 by denying her the same terms and conditions of employment as described above, including, but not limited to, denying her equal treatment, subjecting her to harassing behavior and by terminating her employment.

72.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of Section 1981, Stewart has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

73.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of Section 1981, Stewart has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

74.     FIT's unlawful and discriminatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Stewart, and was done with conscious disregard of Stewart's civil rights, entitling Stewart to an award of punitive damages.

## SECOND CAUSE OF ACTION
## Retaliation in Violation of Section 1981

75.     Stewart incorporates herein by reference paragraphs 1 through 74 above, as if set forth herein in their entirety.

76.     FIT has retaliated against Stewart, by *inter alia*, subjecting her to unfair and harassing treatment and by ultimately terminating her employment, in violation of Section 1981 for her opposition to discriminatory practices directed toward herself and other people of her race.

77.     As a direct and proximate result of the FIT's unlawful retaliatory conduct in violation of Section 1981, Stewart has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

78.     As a direct and proximate result of the FIT's unlawful retaliatory conduct in violation of Section 1981, Stewart has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

79.     FIT's unlawful and retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Stewart, and was done with conscious disregard of Stewart's civil rights, entitling Stewart to an award of punitive damages.

## THIRD CAUSE OF ACTION
## Race Discrimination and Harassment in Violation of Title VII

80.     Stewart incorporates herein by reference paragraphs 1 through 79 above, as if set forth herein in their entirety.

81.     FIT has discriminated against Stewart on the basis of her race in violation of Title VII by denying to her the equal terms and conditions of employment, subjecting her to harassment and terminating her employment.

82.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of Title VII, Stewart has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

83.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of Title VII, Stewart has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

**FOURTH CAUSE OF ACTION**
**Race Discrimination and Harassment in Violation of NYSHRL**

84.     Stewart incorporates herein by reference paragraphs 1 through 83 above, as if set forth herein in their entirety.

85.     FIT has discriminated against Stewart on the basis of her race in violation of the NYSHRL by denying to her the equal terms and conditions of employment, subjecting her to harassment and terminating her employment.

86.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

87.     As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

## FIFTH CAUSE OF ACTION
### Disability Discrimination and Harassment in Violation of NYSHRL

88. Stewart incorporates herein by reference paragraphs 1 through 87 above, as if set forth herein in their entirety.

89. Stewart is a qualified individual with a disability.

90. FIT has discriminated against Stewart on the basis of her disability in violation of the NYSRL by denying to her the equal terms and conditions of employment, failing to accommodate her disability, subjecting her to harassment and terminating her employment.

91. As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

92. As a direct and proximate result of the FIT's unlawful discriminatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of NYSHRL

93. Stewart incorporates herein by reference paragraphs 1 through 92 above, as if set forth herein in their entirety.

94. FIT has retaliated against Stewart by, *inter alia*, subjecting her to unfair and harassing treatment and by ultimately terminating her employment, in violation of the NYSHRL for her opposition to discriminatory practices directed toward herself and others of her same race.

95. As a direct and proximate result of FIT's unlawful retaliatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

96. As a direct and proximate result of the FIT's unlawful retaliatory conduct in violation of the NYSHRL, Stewart has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

**SEVENTH CAUSE OF ACTION**
**<u>Race Discrimination and Harassment in Violation of NYCHRL</u>**

97. Stewart incorporates herein by reference paragraphs 1 through 96 above, as if set forth herein in their entirety.

98. By committing the foregoing acts of race discrimination, the FIT violated the NYCHRL.

99. As a direct and proximate result of the FIT's violations of the NYCHRL, Stewart has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

100. FIT's conduct was willful, wanton and demonstrated a conscious disregard for Stewart's rights under the NYCHRL and warrants the imposition of punitive damages.

101. Stewart is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the FIT's discriminatory conduct unless and until this Court grants the relief requested herein.

**EIGHTH CAUSE OF ACTION**
**<u>Disability Discrimination and Harassment in Violation of NYCHRL</u>**

102. Stewart incorporates herein by reference paragraphs 1 through 101 above, as if set forth herein in their entirety.

103. By committing the foregoing acts of disability discrimination, FIT violated the NYCHRL.

104. As a direct and proximate result of the FIT's violations of the NYCHRL, Stewart has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

105. FIT's conduct was willful, wanton and demonstrated a conscious disregard for Stewart's rights under the NYCHRL and warrants the imposition of punitive damages.

106. Stewart is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the FIT's discriminatory conduct unless and until this Court grants the relief requested herein.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of NYCHRL

107. Stewart incorporates herein by reference paragraphs 1 through 106 above, as if set forth herein in their entirety.

108. By committing the foregoing acts of retaliation, FIT violated the NYCHRL.

109. As a direct and proximate result of FIT's violations of the NYCHRL, Stewart has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

110. FIT's conduct was willful, wanton and demonstrated a conscious disregard for Stewart's rights under the NYCHRL, and warrants the imposition of punitive damages.

111. Stewart is now suffering and will continue to suffer irreparable injury and monetary damages as a result of FIT's retaliatory conduct unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Stewart prays that this Court enter judgment in his favor and against FIT, and grant to her the following relief:

    a.  A declaratory judgment that the actions, conduct and practices of the FIT complained of herein violate the laws of the United States and the State and City of New York;

    b.  An injunction and order permanently restraining the FIT from engaging in such unlawful conduct;

    c.  An order directing the FIT to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Stewart's employment and personal life;

    d.  An award for all economic damages to be determined at trial, plus pre-judgment interest, to compensate Stewart for the FIT's unlawful conduct, including back pay, front pay and lost benefits;

    e.  An award for all compensatory damages to be determined at trial, plus pre-judgment interest, to compensate Stewart for future pecuniary losses, emotional distress, pain, suffering, inconvenience, mental anguish, stress, anxiety, humiliation, embarrassment, loss of enjoyment of life and other nonpecuniary losses as allowable;

    f.  An award to Stewart for punitive damages;

    g.  An award to Stewart for the costs incurred in this lawsuit, together with reasonable attorneys' fees; and

    h.  An award to Stewart for such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Stewart demands a trial by jury on all issues of fact, her claims and damages herein.

Dated: New York, New York
  December 28, 2018

         CERASIA & DEL REY-CONE LLP


         By  s/ Christie Del Rey-Cone
          Christie Del Rey-Cone
          Alison L. Tomasco
         150 Broadway, Suite 1517
         New York, New York 10038
         646.525.4235
         christie@cdemploymentlaw.com
         alison@cdemploymentlaw.com

         Attorneys for Plaintiff
          Lynda Stewart

# EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Lynda T. Stewart**
**2186 Fifth Avenue apt 4S**
**New, NY 10037**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2018-03715** | **Mabel Tso, Investigator** | **(212) 336-3762** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kevin J. Berry* (signature)

**Kevin J. Berry,**
**District Director**

September 27, 2018

*(Date Mailed)*

Enclosures(s)

cc: **FASHION INSTITUTE OF TECHNOLOGY-STATE**
**UNIVERSITY OF NY**
**227 west 27th Street**
**New York, NY 10001**

# 4076



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

September 27, 2018

Lynda T. Stewart
2186 Fifth Avenue apt 4S
New, NY 10037

Re:  *EEOC Charge No.: 520-2018-03715*
  *Stewart v. Fashion Institute of Technology – SUNY*

Dear Ms. Stewart:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

You allege that you were discriminated against by the above referenced Respondent on the basis of your race and subjected to retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended. In accordance with our procedures, the Commission has evaluated your charge based upon the information you submitted and has decided not to further pursue its investigation of your charge. This determination is final.

Enclosed is your Dismissal and Notice of Rights. If you wish to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice; otherwise your right to sue will be lost.

Please contact Federal Investigator Mabel Tso at (212) 336-3762 if you have any questions.

Sincerely,

_____ for
Kevin J. Berry
District Director